UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JACK SAMUEL PLUMB and JENNIFER PLUMB,<br><br>      Plaintiffs,<br><br>vs.<br><br>SALT LAKE COUNTY and SKYVIEW EXCAVATION & GRADING, INC.,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:13-cv-1113 CW<br><br>Judge Clark Waddoups |

**INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiffs Jack Samuel Plumb and Jennifer Plumb (the Plumbs") own property in Emigration Canyon that has a stream running through it. Their property became part of a flood control project developed by Defendant Salt Lake County (the "County"). The County contracted with Skyview Excavation & Grading, Inc. ("Skyview") to perform the remediation work on various sites in the canyon. Although the Plumbs' property was listed in the project plans, the County and Skyview were required to obtain permission from the Plumbs before entering their property and doing remediation work. The Plumbs contended they did not give permission, but Defendants nevertheless entered their property and significantly damaged it. Consequently, they sued the County and Skyview for negligence and trespass. They also sued the County for inverse condemnation.

A five-day jury trial was held on August 3, 2015 through August 7, 2015. The Plumbs proved Defendants entered their property without permission and damaged it by, among other

things, making a gravel ramp on the property to access the streambed, running heavy equipment over the property and through the streambed, tearing out vegetation and rocks, destabilizing and changing the depth of the stream banks, widening the stream, and generally altering the flow of it. The jury awarded Plaintiffs $112,000 in compensatory damages against the County as follows: (1) Negligence Claim - $26,000; (2) Trespass Claim - $36,000; (3) Fifth Amendment Inverse Condemnation Claim - $50,000. It also awarded compensatory damages against Skyview as follows: (1) Negligence Claim - $ 14,000 and (2) Trespass Claim - $9,000.[1]

Now before the court is the Plumbs' proposed Judgment Upon Jury Verdict. In the proposed judgment, the Plumbs seek an award of prejudgment interest and attorney fees. The County does not dispute the Plumbs are entitled to prejudgment interest on the inverse condemnation action. It filed an Objection, however, to awarding such interest on the negligence and trespass claims.[2] With respect to attorney fees, the Plumbs seek fees pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4654 and 4655, to which the County also objects.[3] For the reasons stated below, the court awards prejudgment interest and concludes the Plumbs are also entitled to attorney fees.

---

[1] Following trial, the Plumbs settled with Skyview. Consequently, it has been dismissed from the case.

[2] Before Skyview was dismissed from the case, it also filed an Objection to the proposed judgment, specifically opposing a prejudgment interest award. Salt Lake County adopted Skyview's Objection in its own briefing. Thus, even though Skyview has been dismissed, the court still considers its arguments with respect to a prejudgment interest award.

[3] The Plumbs filed a Motion for Leave to File Surreply in Support of Proposed Judgment, with respect to the attorney fees argument. (Dkt. No. 119). The court GRANTS the motion and has considered the Surreply in reaching its decision. It also has considered each of the briefs filed by the County.

## ANALYSIS

I.  **PREJUDGMENT INTEREST**

   A.  **Nature of Damages**

Plaintiffs' proposed judgment asks for "prejudgment interest at the rate of 8.0%, compounded annually." Proposed Jdgmt., at 2 (Dkt. No. 116). As stated above, "Salt Lake County does not contest [Plaintiffs'] entitlement to prejudgment interest on the Fifth Amendment takings award." Salt Lake County's Objection, at 2 (Dkt. No. 115). It does object, however, to prejudgment interest on the negligence and trespass claims based upon Utah law. The County contends the Plumbs' damages were not calculable with mathematical accuracy because no set standard exists by which to calculate them. It also asserts the jury had the broad discretion to determine how to allocate damages between the two defendants and among the claims at issue. Additionally, the County asserts the damages were not fixed as of a particular date because the stream bank and other portions of the property have continued to erode over time. These facts, according to the County, preclude prejudgment interest under Utah law.

"Where state law claims are before a federal court on supplemental jurisdiction, state law governs the court's award of prejudgment interest." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1126 (10th Cir. 2003) (citation omitted). Under Utah law, "[p]rejudgment interest may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 51, 210 P.3d 263 (quotations and citation omitted). This does not mean "that at the time the damages accrued, all of the damage figures must be known and remain static throughout the litigation." *Id.* ¶ 52. Instead, the main focus is "on the measurability and calculability of the damages." *Id.* Thus, "[w]here damage figures are subject to calculation . . .

3

even if the method of calculating is uncertain, or the damage figures change, prejudgment interest is appropriate." *Id.* ¶ 55.

In contrast, "[p]rejudgment interest is inappropriate where the trier of fact is left to assess damages based on a mere description of the wrongs done or injuries inflicted." *Id.* ¶ 53 (quotations and citation omitted). Cases such as wrongful death, "libel, slander, false imprisonment" and so forth, are not amendable to prejudgment interest because they require a jury to use "its best judgment as to valuation rather than fixed standards of valuation." *Id.* ¶ 53 n. 23 (quotations and citations omitted).

Two cases illustrate how this law has been applied. In the first case, a landlord sued a tenant for breach of a lease and sought recovery for lost rent and repair costs. *Crowley v. Black*, 2007 UT App 245, 167 P.3d 1087. "The trial court found that the house sustained abnormally high wear and tear during Defendant's lease." *Id.* ¶ 3. Rather than adopting the amount requested by the landlord, however, the trial court attributed some repair costs to normal wear and tear, other repair costs to the landlord for failing to maintain the property, and additional repair costs to the tenant due to his hard treatment of the property. *Id.* ¶ 8. Additionally, the trial court reduced the "lost rent amount from one month to a half a month" because of the typical time a place remains vacant after a tenant moves out. *Id.* The trial court then denied prejudgment interest.

The Utah Court of Appeals reversed the trial court's denial of prejudgment interest. *Id.* ¶ 11. Although the trial court had reduced the lost rent amount and had to allocate the cost of repairs, it nevertheless had known rent amounts, repair amounts, and specific dates. *Id.* ¶ 8. It "reviewed receipts and work orders" to show "the dates of repairs and their associated costs." *Id.* ¶ 9. Thus, even though it determined "which costs to include and which to exclude, this

determination did not render the resulting damage award less measurable by facts and figures." *Id.* (quotations and citation omitted). Because damages were complete and the loss was measurable, the Court concluded prejudgment interest should have been awarded.

In the second case, Sundial Inc. ("Sundial") brought suit against a Home Owner's Association ("HOA") for unjust enrichment. *Sundial Inc. v. The Villages at Wolf Hollow Condominium Homeowner's Ass'n, Inc.*, 2013 UT App 223, 310 P.3d 1233. Sundial purchased thirty-four condominium units in a distressed project. *Id.* ¶ 3. It paid the HOA $44,500 "to cover the monthly assessment on the Sundial units and a large additional sum to ensure the Project's survival." *Id.* Following a bench trial, the trial court entered judgment for Sundial, concluding "Sundial paid significantly more than the monthly fees it was required to pay" to "prevent[] liens from being recorded against the Project and avoid[] foreclosure." *Id.* ¶ 5 (quotations and alteration omitted).

To calculate damages, "the trial court adopted a formula to isolate the benefit unjustly conferred on the HOA from the benefit to Sundial itself." *Id.* The trial court had broad discretion in adopting the formula because no set standard existed to calculate the benefit conferred on the HOA. *Id.* ¶ 9. Rather, it had to rely on a "mere description of the benefits conferred on Sundial as opposed to those conferred on the HOA." *Id.* (quotations and citation omitted). "Until the trial court selected a methodology, the amount of damages could not be ascertained with precision." *Id.* ¶ 10. Because the damages were not based on mathematical facts and figures, the trial court ultimately denied prejudgment interest. *Id.* ¶ 6. The Utah Court of Appeals affirmed the ruling. *Id.* ¶ 11.

The difference between *Crowley* and *Sundial, Inc.* pertains to the tangibility of the damages. Damages that capture a nebulous deprivation of benefits, emotional harm, or uncertain

future conditions[4] are not subject to measurable facts and figures.  One must resort to "a mere description of the wrongs done or injuries inflicted."  *Encon Utah, LLC*, 2009 UT 7, ¶ 53 (quotations and citation omitted).  In contrast, damages that are quantifiable and shown through receipts, work orders, and other such items are amenable to prejudgment interest.  This is so even if one disagrees with how much a repair cost may be or whether such costs must be allocated.

In this case, the damage to the Plumbs' property commenced on February 4, 2013 and continued on for two days.  By February 6th, the streambed was gouged with heavy equipment tracks, the gravel ramp was in place, the vegetation and rocks had been removed, and the cut of the banks and stream had been altered.  All substantial damage was therefore complete by February 6th.  Any further erosion was attendant to the County's completed actions and not a result of new trespass and negligence claims.

Thereafter, the Plumbs obtained different bids to determine the cost of stabilizing the stream banks and returning the stream back to its previous form.  One contractor suggested bringing in boulders to restore the streambed, planting vegetation to stabilize the stream banks, and so forth.  The cost for the labor, materials, and equipment were set forth.  Likewise, the County presented its cost estimates to revegetate and stabilize the stream banks.  Although the costs differed significantly from the Plumbs' estimated repair costs, both parties presented quantifiable facts and figures at trial on what it would cost to restore the stream.

The Plumbs' then presented expert testimony from an appraiser.  The appraiser evaluated

---

[4]   In *Cornia v. Wilcox*, 898 P.2d 1379 (Utah 1995), the case involved calculating damages for missing cattle.  The damage estimate necessarily had to speculate on the future condition of the cattle, such as their expected weight, anticipated pregnancy rates, gender of the calves, mortality rates, and so forth.  *Id.* at 1387.  Under such conditions, prejudgment interest was inappropriate because damages could not be measured with mathematical accuracy.  They depended on uncertain factors.  *See Encon Utah, LLC*, 2009 UT 7, ¶ 64 (citing *Cornia v. Wilcox*, 898 P.2d 1379 (Utah 1995)).

the repair costs and applied established methodologies for determining how much the damage depreciated the value of the property. Notably, the standard required the appraiser to assume *all* damage occurred on February 4, 2013. Only then could he compare the value of the property immediately before the damage occurred with the value of the property immediately afterwards. Any other time frame would have had to account for market factors. This methodology is accepted in the industry and was not challenged at trial. Indeed, the County presented no contrary expert. The jury was therefore provided concrete facts and figures stating the nature of the damages, the specific costs of certain items, and the impact on the property's value. The damages also were fixed as of a particular date.

The jury ultimately awarded a damage amount less than what the Plumbs' expert identified. It also allocated damages between the two defendants and among the negligence, trespass, and inverse condemnation claims. The allocation, however, was similar to that approved in *Crowley* when damages were allocated between normal wear and tear, negligent maintenance of the property, and destruction of the property by the tenant. The fact that the jury was required to allocate damages in this case does not alter the nature of the damages (i.e. their measurability and calculability).[5] Nor does it alter the fact that the County caused concrete, quantifiable damages regardless of how the Plumbs' styled their legal claims. *See Sundial Inc.*, 2013 UT App 223, ¶ 8 (stating "this court has cautioned that relying on the nature of the claim to determine whether prejudgment interest is allowed is inappropriate") (quotations, citation, and alteration omitted)).

Moreover, the *Crowley* court recognized the trier of fact's rejection of certain costs also does not alter their measurability and calculability. Because the Plumbs' damages were fixed as

---

[5] Utah case law focuses on the measurability and calculability of damages not how damages are allocated when determining whether prejudgment interest should be awarded.

of a certain date, quantifiable, and the methodology for calculating them was well-established, the court concludes the Plumbs' are entitled to prejudgment interest on their negligence and trespass claims.

### B.     Interest Rate

The Plumbs' proposed judgment also seeks "prejudgment interest at the rate of 8.0%, compounded annually." Proposed Judgment, ¶ 2(a) (Dkt. No. 116). The proposed judgment does not differentiate between the different claims, but the Plumbs' supporting brief asserts the 8.0% interest rate should be applied to their negligence and trespass claims pursuant to Utah Code Ann. § 78B-6-510(5)(c)(i). That statute applies to eminent domain proceedings, which differ in important respects from these proceedings. Nevertheless, the nature of the damages in this case is analogous to a takings claim. Thus, the Plumbs' contend the same interest rate should apply and the County has presented no contrary argument.

Accordingly, the court awards prejudgment interest at the rate of 8% per annum for the Plumbs' negligence and trespass claims.  The rate, however, shall be simple and not compounded in keeping with Utah case law. *See City of Hildale v. Cooke*, 2001 UT 56, ¶ 36, 28 P.3d 697 (stating compounded interest is disfavored and not supported by the plain language of the predecessor statute).

With respect to the federal inverse condemnation action, the County stated it "does not contest Plaintiff's [sic] entitlement to prejudgment interest on the Fifth Amendment takings award." Salt Lake County's Objection, at 2 (Dkt. No. 115). It did not present any argument, however, about the interest rate despite multiple rounds of briefing on the Plumbs' proposed judgment. Although the County has been silent on the issue, the court has discretion to review the appropriateness of the 8% per annum compounded interest rate requested by the Plumbs.

*Digital Ally, Inc. v. Z3 Tech., LLC*, 754 F.3d 802, 819 (10th Cir. 2014).

Congress has established a prejudgment interest rate under the Declaration of Taking Act, 40 U.S.C. § 3116 (2012), (the "Act") for eminent domain cases. The Act's rate is tied to the one-year Treasury yield. Some courts have accepted this rate for inverse condemnation claims. *See e.g.*, *United States. v. 191.07 Acres of Land*, 482 F.3d 1132, 1135, 1138 (9th Cir. 2007). The Federal Claims Court has noted, however, the rate fails to take into account how a landowner would have invested his property. *Love Terminal Partners v. United States*, No. 08-536L, 2016 U.S. Claims LEXIS 314, at *140 (Fed. Cl. Apr. 19, 2016) (*citations* omitted). Accordingly, at times it has fashioned its own interest rate for inverse condemnation claims to ensure the landowner's economic harm is redressed. *Id.* at *141.

In this case, even though the County has filed no Objection to the Plumbs' proposed 8% compounded interest rate, the court concludes a compounded rate would far exceed the rate under the Act. The court is reluctant, however, to substantially reduce the proposed interest rate when there has been no objection to it.[6] Accordingly, the court concludes the prejudgment interest rate for the federal inverse condemnation claim also shall be 8% per annum, with simple interest.

The post-judgment interest rate for all of the claims (negligence, trespass, and inverse condemnation) shall be that stated in 28 U.S.C. § 1961. *Adams-Arapahoe Joint Sch. Dist. v. Continental Ins. Co.*, 891 F.2d 772, 780 (10th Cir. 1989) (stating "the federal [post-judgment] rate applies, even in diversity actions").

---

[6] The County has had the opportunity to submit three briefs pertaining to the proposed judgment. Any objection, therefore, should have already been raised.

## II.     ATTORNEY FEES AND COSTS

The County also challenges the Plumbs' request for "attorneys' fees, expert fees, and other litigation expenses provided under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654" (the "Acquisition Act"). It does so on the following grounds.

### A.     The Plumbs Did Not Assert a Claim Under the Uniform Act

The County contends the Plumbs' request should be denied because they failed to assert a claim under Section 4654 of the Acquisition Act. Section 4654 does not provide a cause of action. It merely provides for statutory reimbursement of attorney fees and other costs in the event a property owner prevails on an inverse condemnation action. The Plumbs' Prayer for Relief in its Second Amended Complaint asked for "an award of reasonable attorney's fees and costs." Second Amended Complaint, at 11 (Dkt. No. 24). Moreover, as discussed below, the County agreed to be bound by Section 4654 when it received federal funding for the flood remediation project. The County therefore had notice that attorney fees and costs were at issue in this case.

### B.     A Fifth Amendment Taking Does Not Allow for Attorney Fees

When the government takes property, the Fifth Amendment requires just compensation for it. The County asserts, however, attorney fees and costs are precluded based on Supreme Court precedent. The Supreme Court has stated that "indirect costs to the property owner caused by the taking of his land are . . . not part of the just compensation to which he is constitutionally entitled." *United States v. Bodcaw Co.*, 440 U.S. 202, 203 (1979) (per curiam) (citations omitted). This means "attorneys' fees and expenses are not embraced within just compensation." *Id.* (quotations and citation omitted).

The Supreme Court has further stated, however, there are "important practical differences between condemnation proceedings and actions by landowners to recover compensation for 'inverse condemnation.'" *United States v. Clarke*, 445 U.S. 253, 257 (1980). Rather than following appropriate statutory requirements for a taking, in inverse condemnation situations, the government "shifts to the landowner the burden to discover the encroachment and to take affirmative action to recover just compensation." *Id.* This shift "can place the landowner at a significant disadvantage." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 712 (1999) (opinion of J. Kennedy) (quotations and citations omitted).

Perhaps in recognition of this inequity, Congress passed the Acquisition Act. It provides in relevant part:

> The court rendering a judgment for the plaintiff in a proceeding brought under [28 U.S.C. § 1346(a)(2) or § 1491], awarding compensation for the taking of property by a Federal agency, . . . *shall* determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, *including reasonable attorney, appraisal and engineering fees*, actually incurred because of such proceeding.

42 U.S.C. § 4654(c) (2012) (emphasis added). Thus, Congress has declared that attorney fees and costs should be awarded when an inverse condemnation action falls within Section 4654, and the Supreme Court has recognized this as an exception to the typical rule. *See Bodcaw Co.*, 440 U.S. at 204 (recognizing attorney fees are permissible through "legislative grace" for inverse condemnation actions). Attorney fees are therefore not prohibited in this case.

### C. These Proceedings Do Not Involve the United States

Section 4654 specifies it only applies if a proceeding is brought under either 28 U.S.C. §

11

1346(a)(2) or § 1471.[7]  *Id.*  Section 1346(a)(2) pertains to a "civil action or claim *against the United States*, not exceeding $10,000 in amount."  (Emphasis added.)  Because this action does not involve a claim against the United States, the County asserts the Acquisition Act is inapplicable and cannot form the basis for attorney fees and costs.  The court disagrees because Section 4654 must be construed in conjunction with Section 4655 of the Acquisition Act.

Section 4655 extends the scope of Section 4654(c) to include not only claims against the United States, but also claims against an "acquiring agency" that receives federal funding for a project and contractually agrees to be bound by Section 4654.  28 U.S.C. § 4655(a); *see also Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency*, 609 F.2d 383, 385 (9th Cir. 1979) (stating Section 4654 applies to state agencies that give assurances under Section 4655).  An "acquiring agency means . . . a State agency . . . which has the authority to acquire property by eminent domain under State law."  *Id.* § 4655(b)(1).  In turn, a "State agency" includes the State's political subdivisions.  28 U.S.C. § 4601(3).  Because the County is a political subdivision of the State of Utah, and has the power to acquire property by eminent domain pursuant to Utah Code Ann. § 17-50-302(2)(a)(iii)(A), it meets the definition of "acquiring agency."

As an "acquiring agency," the County had to provide satisfactory assurances that "property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654," *id.* § 4655(a)(2), before it could receive federal funding for its Emigration Canyon project.  The County did so by executing a document entitled "Assurances Relating to Real Property Acquisition." (Dkt. No. 117-2).  The document states the County provided assurances it was compliant with the Acquisition Act, including Sections 4654 and 4655.  *Id.* ¶ C.

---

[7]  Section 1471 pertains to the United States Court of Federal Claims and is not relevant here.

Consequently, the County agreed to be bound by Acquisition Act's provisions.[8]

### D. No Acquisition Occurred

Even though the County is an "acquiring agency" that agreed to be bound by the provisions of the Acquisition Act, the County contends the Act is still inapplicable because (1) it did not intend to acquire property and (2) there was no actual acquisition of property.

The Acquisition Act is divided into three subchapters. The first subchapter includes general provisions and definitions. 42 U.S.C. §§ 4601 to 4605. The second subchapter pertains to individuals displaced from their property. *Id.* §§ 4621 to 4638. The loss of property due to displacement involves damages for the lost property and may further include costs to move, costs to shut down a business, replacement housing, mortgage insurance, and so forth. Congress provided for reimbursement of such expenses under the second subchapter. The third subchapter sets forth policies that are to be followed when the government acquires real property to ensure uniformity. *Id.* §§ 4651 to 4655.

The County relies upon the cases of *Alexander v. United States Department of Housing & Urban Development*, 441 U.S. 39 (1979) and *Devines v. Maier*, 665 F.2d 138 (7th Cir. 1981) to support its contention that the Acquisition Act is inapplicable to this case. Both cases addressed claims by displaced persons seeking relocation benefits. A "displaced person" is defined under Section 4601(6) to include, in relevant part, those who *move* from their real property "as a direct result of a *written notice of intent* to acquire *or* the acquisition of such real property in whole or

---

[8] Although only the County signed the agreement, the property owners were the intended beneficiaries of the provisions requiring the County to reimburse the owners' attorney fees and costs in the event of an inverse condemnation. Section 4654 is one of the focal points of the agreement for the purpose of "confer[ing] a separate and distinct benefit" on the property owners. *See VCS, Inc. v. Countrywide Home Loans, Inc.*, 2015 UT 46, ¶ 29, 349 P.3d 704 (quotations and citation omitted). Thus, the benefits of the agreement run to the property owners.

in part for a program or project undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4601(6)(A)(i)(I) (emphasis added). The Supreme Court held 4601(6)'s written order provision "encompasses only those persons ordered to vacate in connection with the actual or proposed acquisition of property for a federal program." *Alexander*, 442 U.S. at 62. Actual acquisition does not mean, however, that an agency must acquire title to the property. *Id.* at 63 n. 41. Rather "Congress focused on the eventual right to use property." *Id.* According to the Seventh Circuit, this "carr[ies] the connotation of vesting affirmative property rights." *Devines*, 665 F.2d at 148. The County contends "acquisition" should carry the same definition throughout the Acquisition Act, and when that definition is applied, it shows that no acquisition occurred in this case.

*Alexander* and *Devines*, however, involved a specific subcategory of individuals, namely, "displaced persons." Displacement involves more than entering and damaging property. It necessitates the moving of persons due to the government's acquisition of their property. This is one of the most disruptive forms of a taking. Subchapter III pertains to policies and procedures for any acquisition, not just acquisitions involving displaced persons. Section 4655 of that subchapter, which binds the County, conveys different concepts and conditions than Section 4601(6). In relevant part, Section 4655 section provides:

> [T]he head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an *acquiring agency* under which Federal financial assistance will be available to pay all or part of the cost of any program or project *which will result in the acquisition of real property*. . . , unless he receives satisfactory assurances from such acquiring agency that [the agency will be guided by the policies and provisions of Sections 4651 and 4652] and . . . property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654 of this title.

42 U.S.C. § 4655(a)(1)-(2) (emphasis added).

While acquisitions under Subchapter III may entail acquiring title or a vested property right, that level of acquisition is not mandated by the language. Unlike Section 4601(6), nothing in Section 4655 requires a notice to vacate and removal of individuals. It simply refers to acquisition of real property. Section 4655 therefore encompasses a broader range of acquisitions than those defined by *Alexander* and *Devines*. It also signals the types of acquisitions that may be at issue by conditioning the receipt of federal money on an acquiring agency agreeing to pay attorney fees in inverse condemnation situations. 42 U.S.C. § 4655(a)(2).

In this case, a jury found the County liable for inverse condemnation. The evidence well-supported that the County acquired use of the Plumbs' property without their permission. It also supported that the County took streambed sediment, rocks, vegetation, and a portion of the stream banks from the property to further its project, which so altered the stream and its flow that the streams banks became unstable and destroyed a pool where fish had existed. The "acquisition" condition has therefore been met and the court will not read further requirements into the statute to defeat the County's written agreement to pay attorney fees when inverse condemnation has been proven.[9]

As a final matter, the County also relies upon *Alexander* to assert that if an acquisition did occur, the Plumbs had to show the County intended to acquire their property. *Alexander*, however, pertained to the written order provision of Section 4601(6) which requires the notice to state an "intent to acquire." Again, Section 4655 lacks similar language. Moreover, to the extent

---

[9] The Utah Legislature also issued a Declaration of Policy acknowledging that Congress has "established uniform policies for land acquisition under the [Acquisition Act]" and "that it is in the public interest for the state to provide for such payments and to establish such land acquisition policies." Utah Code Ann. § 57-12-2(1)(e)-(f) (2016). Although that chapter largely pertains to relocation assistance, the fact that the Legislature acknowledged the federal acquisition procedures and its desire to follow them also supports the County committed to be bound by Section 4654(c)'s attorney fees provision.

the County is contending they needed to act "intentionally" with respect to its inverse condemnation, it bears noting that a federal inverse condemnation action does not require a specific showing of "intent[] to invade a protected property interest." *Moden v. United States*, 404 F.3d, 1335, 1342 (Fed. Cir. 2005) (citation omitted). Instead, such an action may be maintained if the injury to the property was a foreseeable or "direct, natural, or probable result" of the government's actions. *Id.* (citation omitted). Thus, unlike Section 4601(6), Section 4654(c)'s attorney fee provision requires reimbursement regardless of whether the inverse condemnation was intentional or not. Section 4655 does not change this. The court therefore concludes the Acquisition Act is applicable to this case and the Plumbs are entitled to recover attorney fees and other costs specified under 42 U.S.C. 4654(c).

## **CONCLUSION**

For the reasons stated above, the Plumbs are entitled to prejudgment interest at the rate of 8% per annum on their negligence, trespass, and inverse condemnation claims. Such interest shall be simple and not be compounded. The Plumbs also are entitled to post-judgment interest at the rate specified under 28 U.S.C. § 1961. Finally, for their inverse condemnation claim, the Plumbs are entitled to attorney fees and other costs specified under 42 U.S.C. § 4654(c). On or before **June 17, 2016**, the Plumbs shall submit an affidavit and other documentation consistent with DUCivR 54-2 for the amount of attorney fees, expenses, and costs. The Clerk of Court is directed to enter Judgment in conformance with the jury verdict and this decision.

DATED this 17th day of May, 2016.

BY THE COURT:

_____
Clark Waddoups
United States District Judge