UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JACK SAMUEL PLUMB and JENNIFER PLUMB,<br><br>           Plaintiffs,<br><br>vs.<br><br>SALT LAKE COUNTY and SKYVIEW EXCAVATION & GRADING, INC.,<br><br>           Defendants. | **MEMORANDUM DECISION AND ORDER AWARDING ATTORNEY FEES**<br><br><br>Case No. 2:13-cv-1113 CW<br><br>Judge Clark Waddoups |

Before the court is the motion of Plaintiffs Jack and Jennifer Plumb for an Award of Attorney Fees and Other Litigation Expenses. (Dkt. No. 139.) The motion is supported by the Declaration of Brandon J. Mark with attached exhibits (Dkt. No. 139-1) and the Supplemental Declaration of Brandon J. Mark, also with attached exhibits (Dkt. No. 176). Judgment has been entered in Plaintiffs' favor (Dkt. No. 144), and the court previously ruled that Plaintiffs are entitled to attorney fees for their inverse condemnation claims and for other costs specified in 42 U.S.C. § 4654(c). (Dkt. No. 132.) The issue now before the court is the reasonableness of the amount of attorney fees requested. Defendant Salt Lake County opposes the motion, arguing that the requested amount should be significantly reduced. (Dkt. No. 148.)

Plaintiffs initially requested attorney fees of $289,599.50, expert fees of $30,547.61, and costs and expenses of $7,699.76, for a total of $327,846.87. (Dkt. No. 139.) After the post-trial motions, Plaintiffs supplemented their motion to request an additional $31,722.00 in attorney fees and $5,879.17 for additional and untaxed costs, for a total of $365,448.04. (Dkt. No. 176.)

*Plaintiffs' Original Request for Attorney Fees*

The beginning point in determining the reasonableness of a request for attorney fees is the lodestar amount, calculated by multiplying the hours spent times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This same methodology has been recognized as appropriate to determine the fees to be awarded under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654 (the "Acquisition Act"). *Hash v. United States*, No. 1:99-cv-00324-MHW, 2012 WL 1252624, at *3 (D. Idaho April 14, 2012). The lodestar amount must be supported by detail specifying the dates, tasks accomplished, and the time spent on the various tasks. *Id.* The descriptions must be sufficiently detailed to allow the court to determine that the task was reasonably related and necessary to pursue the claim. *Id.* The court finds that the lodestar amount in this case is supported by sufficient detail to allow the court to determine the reasonableness of the request. The court also finds that the hourly rates used to calculate the lodestar amount are consistent with fees regularly charged by attorneys with the experience and expertise of Plaintiffs' lawyers.

There is a presumption that the lodestar amount is a reasonable fee, and the court should deviate only in "'exceptional' cases." *Id.* (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010)). The court should not "mechanically adjust the lodestar figure downward based on the amount involved and the results obtained." *Bywaters v. United States*, 684 F.3d 1295, 1296 (Fed. Cir. 2012) (citation, quotation marks, and brackets omitted). Moreover, because the Acquisition Act is intended "to permit people with small takings claims to vindicate their rights with the assistance of competent counsel," the reasonableness of the fee is not driven necessarily by the amount of the recovery. *Id.* (citation and quotation marks omitted). The Act's purpose is the vindication of "constitutionally protected property rights." *Id.* (citation and quotation marks

omitted). The court should also consider that the plaintiff in such an action was forced to litigate with the government entity and any unreasonableness of the government entity's actions in refusing to offer reasonable compensation for the property taken. *Pete v. United States,* 569 F.2d 565, 568 (Ct. Cl. 1978). The court may also weigh the nature of the opposition and defenses offered by the government entity in determining the fees reasonably incurred. Indeed, the fact that the fees incurred exceed the amount recovered is not a basis for reducing the fees if the court finds they have been reasonably necessary to respond to the government entity's litigation approach to resisting fair compensation. *See, e.g.*, *Swisher v. United States*, No. 98-1352-CM, 2003 WL 2006818 (D. Kan. March 3, 2003).

Nevertheless, the court is required to carefully evaluate the reasonableness of the fee requested and appropriately adjust it to account for the results obtained and the necessity of the time spent. In *Hensley*, the Supreme Court gave the following guidance:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

461 U.S. at 436–37. These considerations include the skill and experience of the lawyers and whether there has been a good-faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434. The court should also consider whether the billing attorneys have exercised "billing judgment." *Id.* The court may also adjust the fee upward or downward based on the "result obtained," while recognizing that this consideration includes whether the plaintiff achieved excellent results and the type of relief obtained. *Id.* A fee should not mechanically be reduced simply because a plaintiff did not prevail on all of the relief requested. *Id.* at 434–35.

Salt Lake County raises the following seven objections to the amount of fees requested. First, the County argues, relying on *Emeny v. United States*, 526 F.2d 1121, 1123 (Ct. Cl. 1975), that the Acquisition Act "does not allow the prevailing party in an inverse condemnation [action] to recover expenses incurred prior to the filing of the lawsuit." (Dkt. No. 148, p. 4.) The County argues that Plaintiffs began incurring fees in March 2013 but that the first time entry mentioning the drafting of complaint was October 25, 2013. (Dkt. No. 148, p. 5.) Thus, it contends that the fee request should be reduced by 18.3 hours for time billed during this interim period. (Dkt. No. 148, p. 5.) The County does not assign a dollar value to the reduction it seeks.

In *Emeny*, the court affirmed the trial court's award to the plaintiffs of damages in the amount of $221,880 for the taking of gas storage rights and incidental rights in the surface of plaintiffs' land and of $341,346.60 as litigation expenses. *Id.* at 1126. The Government opposed the award as excessive. *See id.* at 1124. The requested expenses included pre-litigation expenses and litigation expenses. *Id.* at 1123–25. The court rejected the request for pre-litigation expenses as not being allowed by the Acquisition Act. *Id.* at 1124. In explaining its ruling, the court noted that § 4654(c) only allows for "'reasonable' expenses that are 'actually incurred because of' a proceeding" brought for the taking of property. *Id.* The court described the time spent on "pre-litigation" as efforts "to ascertain the nature and extent of their property right in the gas storage capacity of the Bush Dome, and . . . to obtain a recognition of such right from the Government through negotiations." *Id.* Such efforts were not expended because of the litigation, but to clarify the nature of the property rights. *See id.* The court concluded that it was precluded by the language of § 4654(c) from awarding expenses before plaintiffs decided to file suit and declined to award the amount incurred pre-litigation. *Id.*

The *Emeny* court did, however, allow the time incurred to pursue the litigation once the

4

plaintiffs decided to file suit, but it reduced the requested amount because of plaintiffs' strategy of hiring several law firms to be assured they presented a strong legal position. *Id.* at 1125–26. The court noted that plaintiffs had engaged "duplicate sets of lawyers" to bring and review the claims asserted and that, while this may have been "objectively reasonable" from plaintiffs point of view, the Government should not bear that expense. *Id.* at 1124, 1126. The court eliminated the fees requested for time spent reviewing the principal attorneys' work, awarding 91% of the total expense requested. *Id.* at 1126. The award included $69,240.15 for time the plaintiffs spent establishing their right to recover litigation expenses. *Id.* at 1127. The court rejected the argument that the requested fees should be further reduced because they exceeded the amount awarded as damages. *See id.* at 1126.

Here, the County argues that under the *Emeny* precedent any time spent prior to Plaintiffs' drafting of the complaint should be excluded. (Dkt. No. 148, pp. 4–5.) The argument does not prevail. First, it is clear from a review of the time entries that the work during the period from March 2013 through October 2013 was incurred because of the proceeding. The entries show counsel met with their clients, investigated the facts, complied with pre-filing notice requirements, and engaged in research necessary to advance the litigation. There was no issue as to the Plaintiffs' ownership of the land or the nature of their title. Second, there is no duplication of effort between multiple law firms to review and test the soundness of Plaintiffs' legal theories. The *Emeny* precedent and analysis are not applicable to this case.

Second, the County next objects that the requested fee should be reduced for work on claims brought against Skyview Construction. (Dkt. No. 148, pp. 5–9.) It argues that these were wholly separate claims and were not incurred because of the condemnation proceeding. (Dkt. No. 148, p. 5.) It further argues that the claims against Skyview were dismissed with prejudice,

with each party to bear its own attorney fees and costs. (Dkt. No. 148, p. 6.) The County identifies a total of 10.5 hours as examples of the difficulty of determining which time should be allocated to the Skyview claims. (Dkt. No. 148, pp. 7–9.) The County suggests that the resolution of this difficulty is to reduce by 50% all of the fees incurred prior to Skyview's dismissal. (Dkt. No. 148, p. 9.) The court also rejects this objection. The principal weakness of the argument is that the County completed the taking of Plaintiffs' property through Skyview's actions, which the County directed and approved. Thus, Plaintiffs were required to investigate, conduct discovery, and pursue the claims against Skyview in order to prevail on their claims against the County. Moreover, Plaintiffs succeeded in proving that Skyview's conduct resulted in a taking of their property, as well as proving their claims against Skyview, which claims were settled only after a jury verdict in favor of Plaintiffs. Additionally, a review of the 10.5 hours the County argues as an "example" of time not awardable supports that the time would have been incurred even if no claims had been brought against Skyview. For instance, time was spent conducting discovery against Skyview and reviewing Skyview documents, all essential to pursuing the claim against the County.

Third, the County objects that Plaintiffs have not met their burden of proving that the requested fees are reasonable. (Dkt. No. 148, pp. 9–11.) It argues that the number of hours spent is not "proportional" to the complexity and novelty of the issues raised, was duplicative, and included time for "general legal research" that should not be allowed. (Dkt. No. 148, pp. 10–11.) The County provides no citation to billing entries it believes are duplicative and suggests no amount that it claims would adjust the requested fees to be appropriately proportional. The court rejects the arguments. Where the objecting party fails to identify problematic billing entries, it is not the role of the court to review the records and do the work the objecting party has failed to

do. More importantly, the court has reviewed the billing records and finds that the time was appropriately incurred and consistent with the work necessary to assert the claims and respond the defenses raised by the County.

Fourth, the County argues the requested fees should be reduced because Plaintiffs' counsel has not exercised "billing judgment." (Dkt. No. 148, pp. 11–12.) The County relies upon *Case v. Unified School District No. 233, Johnson County, Kansas*, 157 F.3d 1243, 1250 (10th Cir. 1998), in which the Court defined "billing judgment" as the "winnowing" of hours down to the hours that "an attorney would not properly bill to his or her client." The County does not suggest any amount by which it claims the requested fees should be reduced, but it does argue that Plaintiffs' counsel must not have exercised billing judgment because they included almost 50 hours for legal research performed by law clerks and over 100 hours spent on administrative tasks and "inter-office communications." (Dkt. No. 148, pp. 11–12.) Plaintiffs respond that counsel has in fact exercised billing judgment by removing all time for work done exclusively on the Skyview trespass or negligence claims. (Dkt. No. 150, p. 5.) They respond further that the fees requested were in fact billed to the Plaintiffs and the time spent by law clerks and paralegals was appropriately adjusted and that the time actually billed was needed to respond to the County's motions. (Dkt. No. 150, pp. 5–6.) In the absence of the County identifying any specific entries it contends were unreasonably incurred, the court is left with the task of determining whether the time entries appear on their face to be reasonable and properly related to the claims made. That review confirms that the Plaintiffs' counsel reasonably assigned work to law clerks and paralegals to have the work completed at their lower billing rates and that the work was consistent with the briefing and other responses necessary to advance the claims and respond to the County's motions and other defenses.

Fifth, the County again objects that the requested fee should be reduced because several lawyers worked on the case and duplicated effort. (Dkt. No. 148, p. 12.) It argues that more than a dozen attorneys worked on the case and at least five attorneys billed more than 200 hours each. (Dkt. No. 148, pp. 12–13.) The County relies upon *Cloverport Sand & Gravel, Inc. v. United States*, 10 Cl. Ct. 121, 125 (1986), for the proposition that the court should consider whether there has been duplication and review "with particular care" the number of lawyers involved in various court proceedings. (Dkt. No. 148, pp. 12–13.) The Plaintiffs respond that only two attorneys worked on the case at any one time, except for a brief time early on when a junior attorney reviewed documents. (Dkt. No. 150, p. 7.) They also respond that the Tenth Circuit has recognized that "intra-office" conferencing is compensable, citing *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 616 F.3d 1098, 1105 (10th Cir. 2010). The court has reviewed the time spent and the number of attorneys assigned to work on the various tasks. From the billing entries it appears that the assignments were appropriate and the work reasonably related to the claims and defenses. The court also notes that intra-office communications are necessary to coordinate the work and are often strategic and that conceptual discussions about the theory of the case, the evaluation of the strength of the evidence, and additional discovery and research necessary to advance the claims may be the most effective and valuable time spent on behalf of the client. Such conferences provide the client with the benefit of the experience and wisdom of the more senior attorneys while the day-to-day work is completed by more junior attorneys at a lower billing rate. The court should recognize and not penalize the attorneys for such coordination and conferences.

While recognizing the value of such work, the court must also observe that sometimes additional attorneys are asked to work on a case primarily for the convenience of the law firm.

This is not to suggest such action is improper, but simply in recognition that a new attorney may be asked to complete an assignment when the attorneys regularly working on a case are not available. This may be necessary to meet filing deadlines or other demands of the practice. While not improper, such assignments do require some duplication in explaining to the new lawyer relevant background and prior history of the case and the issues to be addressed. Where such duplication is primarily for the benefit of the law firm, it is appropriate to discount the fees by some reasonable amount. There is, of course, no precise formula or mathematical calculation to address such an adjustment, and the court must rely upon its own experience, familiarity with the facts and complexity of the case, and review of the time entries submitted in support. Based on these factors, the court has determined that the fees requested by the Plaintiffs should be reduced by 3% of the total requested fee, including the supplemental request, to account for this type of duplication. This reduction is $9,639.65.

Sixth, the County objects additionally that the requested fee should be reduced for time spent on basic legal research. (Dkt. No. 148, p. 15.) It relies upon *Bell v. Turner Recreation Commission*, No. 09-2097-JWL, 2010 WL 126189 (D. Kan. Jan. 8, 2010), in which race discrimination and retaliation were alleged. The Court reduced the number of hours allowed, citing *Case*, in which the Tenth Circuit questioned the need for "preliminary research" on the retaliation claim. *Id.* at *10. Here, the County questions the need for 47.9 hours billed for research by two law clerks. It also questions 8.1 hours spent by a more senior attorney for "[r]esearch and review of information for drafting motion to exclude expert testimony." (Dkt. No. 148, pp. 15–16.) The Plaintiffs respond that the time spent for research was just prior to trial and was necessary to prepare jury instructions and the special verdict form and to respond to the County's motion for directed verdict. (Dkt. No. 150, p. 8.) They also explain that the 8.1 hours

spent by a senior attorney was not background research, but was spent both to research **and** draft the motion, which required reviewing the expert report and deposition transcripts, **as well as** the relevant legal authorities. (Dkt. No. 150, p. 8.)

The County's objection is not well taken. First, the research was done at a critical time in the preparation of the case. In the court's experience, if there is a criticism to be directed at attorneys for inadequate trial preparation, it is that they spend too little time researching and drafting jury instructions. The care spent by attorneys to understand existing precedent, conceptualize their legal theory in the context of the facts the evidence will support, and prepare well-crafted jury instructions and special verdict forms is of great value to the client and to the court. Counsel should be rewarded for such care, not penalized. Moreover, the time spent is consistent with the time required based on the court's own experience in practice and in the time spent by the court and its staff to address these same issues in this case. In today's world, given the complexity and breadth of civil causes of action most practicing attorneys are required to address, it is naïve to suggest an attorney should be able to bring an action as complex as this action without researching the current state of the legal authorities and their application to the facts of the case at hand.

Finally, the County objects that the requested fee is not proportional to the complexity of the issues litigated and should be "drastically" reduced. (Dkt. No. 148, p. 16.) The County relies upon the cases of *Mares v. Credit Bureau of Ratan,* 801 F.2d 1197 (10th Cir. 1986), and *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983), in which the Court reduced the hours allowed because the attorneys billed hours in excess of the national averages of hours billed each day. (Dkt. No. 148, pp. 16–17.) The County characterizes this case as a "relatively uncomplicated inverse condemnation claim" and says it should not have required the number of hours billed

given the amount of discovery taken and the days spent in trial. (Dkt. No. 148, pp. 16–17.) The Plaintiffs respond that the inverse condemnation claim was not simple and was the most contested legal issue in the trial. (Dkt. No. 150, pp. 8–10.) They further argue that the County caused the Plaintiffs to incur the time and should not be heard to complain where the County "tenaciously" litigated the claim. (Citing *Case,* 157 F.3d at 1253–54.) Plaintiffs further argue that the result achieved significantly exceeded the amount offered by the County at mediation just prior to trial. The court observes that at all times the County had two attorneys from the District Attorneys Office actively involved in the case and, soon after the case was filed, added an attorney from a private law firm. All three counsel generally appeared on all documents filed on behalf of the County. All three counsel appeared at the major hearings, and all three counsel appeared for the County at trial. The County obviously viewed the issues sufficiently important and complex to require the representation by all three attorneys. Based on it having resolved the pre-trial motions and dealing with the issues presented at trial, the court finds hours expended by Plaintiffs' counsel were reasonable given the complexity and importance of the issues to the Plaintiffs. The County's objection is overruled.

*Plaintiffs' Supplemental Request for Fees*

Plaintiffs' original motion requested fees for time incurred through June 8, 2016. (Dkt. No. 139.) Following the entry of the Clerk's Judgment on June 27, 2016, the County filed motions for Judgment as a Matter of Law and for New Trial. (Dkt. Nos. 151 and 152.) The Court denied both motions on December 22, 2016. (Dkt. No. 173.) On December 30, 2016, Plaintiffs filed their supplemental declaration seeking additional fees for the time required to respond to the post-trial motions. (Dkt. No. 176.) In the Supplemental Declaration, Plaintiffs summarize all of the time incurred from the inception of the case and the amount of fees Plaintiffs assert should

be award. Plaintiffs did not separately summarize the fees incurred to respond to the post-trial motions. By comparing the prior submissions, the court has calculated the additional time to be 96.4 hours of senior attorney time and 2.2 hours of paralegal time. (Dkt. NO. 176-1.) The additional fees requested for this time is $31,722. Plaintiffs provided detailed billing records to support the additional fees requested. The County submitted a Supplemental Memorandum in response. (Dkt. No. 177.) The County objects that the additional fees requested are excessive, but other than the request for additional costs, which will be addressed hereafter, argues only that it was not necessary for two attorneys to appear at all hearings. (Dkt. No. 177, p. 2.) The court has reviewed the detailed time entries and finds that the additional time spent was reasonable and necessary to address the issues the County's post-trial motions raised. It is appropriate and customary for both trial attorneys to appear at hearings raising the type of substantive issues raised in the post-trial motions. If the County had prevailed on the relief it was seeking, it would have resulted in the jury verdict being vacated and the damage award denied or reduced. It was in the Plaintiffs' interest for both counsel to be at the hearing to respond to the court's questions and advance arguments based on their experience and knowledge of the proceedings. The requested additional fees are not inconsistent with the amount of time and effort required to respond to the arguments made. By comparison, in *Emeny* the Court approved $69,240.15 in additional fees to support the plaintiffs' right to recover litigation expenses on a fee request comparable to the request here. 526 F.2d at 1127. The court rejects the County's objection.

*Award of Attorney Fees*

Having reviewed the original request for attorney fees, the supplemental request for attorney fees, the supporting evidence, and detailed billing records and having considered the County's objections and arguments, the court finds that with the adjustment discussed above the

requested fees were reasonable and necessary because of the inverse condemnation proceeding. The court awards attorney fees in the amount of $311,681.86 ($321,321.50 less 3%).

*Request for Expert Fees*

Plaintiffs request $30,547.61 for expert fees. (Dkt. No. 139.) The request is supported by invoices for appraisal services and testimony from Troy Lunt of Integra Realty Resources, invoices from GSH Geotechnical, Inc. for geotechnical evaluation, and an invoice from ESI Engineering, Inc. for professional engineering services. (Dkt. No. 139-1, Ex. B.) The invoices and the declaration support that the services were incurred in connection with and because of the inverse condemnation claim against the County. Section 4654(c) of the Acquisition Act expressly provides that the court may reimburse a prevailing plaintiff "reasonable costs, disbursements, and expenses, including . . . appraisal, and engineering fees, actually incurred because of such proceedings." *Rose Acre Farms, Inc. v. United States,* 55 Fed. Cl. 643, 670 (2003) (citation and quotation marks omitted). The County in its opposition to the motion for fees and expenses does not raise any objection to awarding the expert fees or to the amount requested. (*See* Dkt. Nos. 148 and 177.) The court finds that the expert fees requested were reasonably necessary to pursuing the claim against the County and are reasonable in amount based on the arguments and evidence presented. The court awards $30,547.61 as expert appraiser and engineering fees.

*Review of Objections to the Bill of Cost*

Plaintiffs timely submitted a Bill of Costs for a total of $7,467.60 on June 27, 2016. (Dkt. No. 145.) The County did not file a response. On August 1, 2016, the Clerk of the Court taxed costs of $5,725.40, disallowing $1,742.20 for copying costs the Clerk determined were not adequately supported as necessary to the case. (Dkt. No. 153.) In the Supplemental Declaration,

Plaintiffs request an additional $4,136.97 for costs following the Clerk's award of costs and object that the Clerk should have allowed the costs denied on its original Bill of Costs. (Dkt. No. 176.) The County objects to the additional costs requested and responds to the arguments that the Clerk should have allowed the untaxed costs. (Dkt. No. 177.)

Pursuant to Rule of Civil Procedure 54, the Clerk of the Court may tax costs on fourteen days' notice. Because the Clerk has not determined whether to allow the additional costs requested, the court defers ruling on the request until after the Clerk makes the initial determination. In addition, any objection to the costs denied by the Clerk should be raised as a request for review of the Clerk's taxation of costs. Therefore, the court defers ruling on any objections until the Clerk makes a determination of all of the costs requested. The request for additional costs is referred to the Clerk for resolution pursuant to Rule 54.

## CONCLUSION

For the reasons stated above:

1. Plaintiffs' Motions for Attorney Fees (Dkt. Nos. 139 and 176) are GRANTED, and Plaintiffs are awarded $311,681.86 as attorney fees.

2. Plaintiffs' motion for reimbursement of expert appraisal and engineering fees and expenses is GRANTED, and Plaintiffs are awarded $30,547.61 for such expenses.

3. Plaintiffs Motion to award additional costs (Dkt. No. 176) is referred to the Clerk for resolution.

DATED this 13th day of February, 2017.

BY THE COURT:

Clark Waddoups
United States District Judge